**MOREQUITY, INC., Appellant Defendant,**

v.

**KEYBANK, N.A., Appellee–Plaintiff,**

and

**Robert Aaron Young, Karen Denise Young, Mellon Mortgage Co., and Firstplus Financial, Inc., Appellees–Defendants.**

No. 41A04–0111–CV–480.

Court of Appeals of Indiana.

Aug. 13, 2002.

Gary P. Price, Todd A. Richardson, Lewis & Kappes, Indianapolis, IN, for Appellant.

## OPINION

MATHIAS, Judge.

Morequity, Inc. ("Morequity") appeals the Johnson Circuit Court's order denying its request for relief from a default judgment and decree of foreclosure entered in favor of KeyBank, N.A. ("KeyBank"). Morequity raises several issues on appeal, which we restate as the following two:

I. Whether the trial court abused its discretion when it refused to consider an affidavit Morequity attempted to submit in support of its Motion for Relief from Judgment and Stay of Sheriff's Sale; and,

II. Whether the trial court's default judgment and decree of foreclosure was void as against Morequity because the trial court lacked personal jurisdiction over Morequity.

We affirm.[1]

---

1. Because we conclude that the trial court did not abuse its discretion when it refused to allow Morequity to file an affidavit on the day of hearing, and because we conclude that Morequity waived its right to argue that the trial court's default judgment and decree of foreclosure was void for lack of personal jurisdiction, we do not address the other issues raised by Morequity as to whether KeyBank properly served Morequity with its complaint and whether Attorney Juliana Robertson had the authority to appear on Morequity's behalf

## Facts and Procedural History

On September 10, 1997, Robert Aaron Young and Karen Denise Young ("the Youngs") executed and delivered a Home Equity Line of Credit Agreement and Disclosure Statement to KeyBank ("KeyBank Agreement") for an amount not to exceed $100,000.00 plus interest and other charges. The Youngs executed and delivered a mortgage ("KeyBank Mortgage") on their residence located in Nineveh, Indiana to secure the KeyBank Agreement. On September 15, 1997, KeyBank recorded the KeyBank Mortgage in the Office of the Recorder of Johnson County, Indiana. This line of credit could only be closed if the balance was reduced to zero and if the Youngs sent written authorization to KeyBank to close the account.

On November 20, 1998, the Youngs executed a mortgage and promissory note on the same residential property in favor of Morequity ("Morequity Mortgage") in the amount of $133,450.00 plus interest, attorney fees and costs. The Morequity Mortgage was recorded in the Office of the Recorder of Johnson County on December 8, 1998. A portion of the Morequity Mortgage proceeds were used to reduce the KeyBank Mortgage balance to zero. Morequity believed the KeyBank Mortgage was then closed; therefore, Morequity believed it had a first lien at that time. Nevertheless, KeyBank never received written authorization from the Youngs authorizing it to close the account.

The Youngs subsequently borrowed money from the KeyBank line of credit and defaulted. At the time that KeyBank filed its complaint on the note in February 2000, there was an approximate balance of $46,000.00 on the account. The named defendants on the complaint were the Youngs, Morequity, Mellon Mortgage Company,[2] and Firstplus Financial, Inc.[3] Mellon Mortgage Company and Firstplus Financial, Inc. are not parties to this appeal.

KeyBank served Juliana Robertson ("Robertson"), an Indianapolis attorney, with Morequity's copy of the complaint on February 24, 2000. On March 2, 2000, Robertson filed an appearance on behalf of Morequity. That same day, Robertson filed Morequity's answer to KeyBank's complaint, stating in pertinent part that, "Morequity does not dispute that Keybank's mortgage lien is superior to that of Morequity." Appellant's App. p. A39. In May of 2000, the Youngs filed a Notice of Bankruptcy. Then on June 27, 2000, in the foreclosure case, KeyBank filed a Motion for Entry of Default Judgment, and Robertson filed a Consent to Judgment on Morequity's behalf. The trial court granted KeyBank's Motion for Default Judgment and Decree of Foreclosure on September 14, 2000.

and consent to judgment. These matters became issues only if the trial court erred in excluding Morequity's excluded affidavit, which it did not. Additionally, we do not address whether Morequity had a meritorious defense because Morequity never first proved that it had made a mistake when it consented to the judgment in favor of KeyBank, or that it consented due to excusable neglect. The trial court found that Morequity failed to prove it was entitled to relief and Morequity chose not to claim in this appeal that the trial court abused its discretion when it did not find a mistake and/or excusable neglect on the part of Morequity.

2. Mellon Mortgage Company recorded a mortgage on November 13, 1997, which was assigned to it after originally being recorded on January 9, 1997.

3. Firstplus Financial, Inc. recorded a mortgage against the Youngs on July 29, 1997, which had been assigned to it that same day.

In either August or September 2000, Morequity asked Robertson to foreclose the Morequity Mortgage, and to name KeyBank as a defendant. Robertson did so. At some point, Robertson came to realize that Morequity wanted to foreclose on the same mortgage that was involved in KeyBank's earlier foreclosure in which she had already consented to judgment and agreed that the KeyBank Mortgage had priority over Morequity. On January 19, 2001, almost seven months after consenting to judgment, Robertson filed a Motion for Relief from Judgment and Stay of Sheriff's Sale on Morequity's behalf, claiming that Morequity's previous consent to judgment in KeyBank's foreclosure was "due to an administrative error that led it to believe that the Keybank Mortgage was indeed junior to the Morequity Mortgage." Appellant's App. p. A43.

The trial court conducted an initial hearing on May 29, 2001, at which Robertson, on behalf of Morequity, testified that Morequity's consent to judgment in Key-Bank's foreclosure was a mistake and/or the result of excusable neglect. Robertson presented two affidavits that KeyBank had not seen prior to the hearing. One was the affidavit of Dorece Kabisch, president of Dreibilbiss Title Company, which handled the Morequity Mortgage closing, and the other was from Robertson herself. Because KeyBank had not had time to review the affidavits or prepare a response, the trial court gave KeyBank thirty days to submit counter-affidavits or request an evidentiary hearing. Morequity was also given ten days thereafter to file any responsive affidavits or evidence. The trial court set the matter for argument and/or evidentiary hearing on July 20, 2001.

On June 28, 2001, KeyBank received an extension of time to file counter-affidavits, until July 29, 2001. Then on July 18, 2001,

KeyBank received a continuance of the hearing, until September 21, 2001. On August 30, 2001 Robertson filed a Motion to Withdraw Appearance, which was granted on September 11, 2001. On September 21, 2001, ten days later, and the date of the continued hearing, Dennis Ferguson ("Ferguson") filed an appearance for Morequity and an affidavit of a Morequity employee in support of the Motion for Relief from Judgment and Stay of Sheriff's Sale.

The hearing took place as scheduled on September 21, 2001. At the hearing, the parties again argued about whether Morequity's consent to judgment was based upon a mistake and/or excusable neglect. The trial court found that the parties had attempted to negotiate a settlement, but had failed to come to an agreement. The trial court also noted that the time for requesting an evidentiary hearing, and for filing responses and/or counter-responses had passed, and therefore, the hearing would proceed on only the matters of record as of May 29, 2001. The trial court excluded Morequity's affidavit in support of its motion that Ferguson attempted to file with the court that same day.

On October 5, 2001, the trial court entered its order denying Morequity's request for relief from judgment and stay of sheriff's sale. The trial court found that Morequity had failed to establish its entitlement to relief from judgment. It is from this order that Morequity appeals.

### I. Standard of Review

 KeyBank failed to file an appellate brief in this appeal. "When an appellee fails to file a brief, we may reverse the trial court's decision based on a showing of prima facie error." *Newman v. Bernstein,* 766 N.E.2d 8, 10 (Ind.Ct.App.2002) (citing *Fagan v. Royer,* 244 Ind. 377, 386–87, 193 N.E.2d 64, 69 (1963)). "Prima facie error means error 'at first sight, on first appear-

ance, or on the face of it.'" *Id.* (quoting *Bd. of Trs. of Purdue Univ. v. Severson,* 729 N.E.2d 1020, 1023 (Ind.Ct.App.2000), *trans. denied* ). We will apply this standard of review to Morequity's appeal.

## II. Exclusion of Morequity's Affidavit

■■ Morequity first argues that the trial court abused its discretion when it refused to allow Morequity to file an affidavit in support of its motion for relief from judgment and stay of sheriff's sale on the same day as the hearing. "The admission and exclusion of evidence falls within the sound discretion of the trial court, and is reviewed only for abuse of discretion." *Dunlap v. State,* 761 N.E.2d 837, 841 (Ind. 2002) (citing *Byers v. State,* 709 N.E.2d 1024, 1028 (Ind.1999); *Amburgey v. State,* 696 N.E.2d 44, 45 (Ind.1998)). Additionally, when a motion for relief from judgment is based upon Indiana Trial Rule 60(B)(1), claiming that there was a mistake, surprise or excusable neglect requiring relief, the motion must be filed within one year of the judgment. Such movants must also allege a meritorious claim or defense. T.R. 60(B).

At the May 29, 2001 hearing, the trial court gave KeyBank thirty days from that date (or until June 28, 2001) to submit counter-affidavits and/or request an evidentiary hearing. The trial court then gave Morequity ten days after the thirty day time period to respond to any affidavits or evidence submitted by KeyBank. KeyBank was granted an extension of time within which to file any counter-affidavits or request an evidentiary hearing, until July 29, 2001. Therefore, Morequity in turn had until August 8, 2001 (ten days after KeyBank's thirty day deadline) within which to file any responsive affidavits or evidence. At no time prior to the September 21, 2001 hearing date did either party submit any affidavits or evidence.

The trial court, after granting KeyBank one extension of time to file counter-affidavits and granting one continuance, eventually heard arguments on Morequity's Motion for Relief from Judgment and Stay of Sheriff's Sale on September 21, 2001, approximately one year after the trial court granted KeyBank's Motion for Default Judgment and Decree of Foreclosure and approximately eight months after Morequity filed its Motion for Relief from Judgment and Stay of Sheriff's Sale. At this hearing, Morequity attempted to file an affidavit of an employee in support of its motion for relief. The trial court refused to admit the evidence into the record because at its hearing on May 29, 2001, it set deadlines for filing affidavits and evidence, which had long since passed by the time of the hearing in September, 2001. Under these facts and circumstances, we conclude that the trial court did not abuse its discretion when it refused to admit Morequity's affidavit in support of its motion for relief when it was presented on the day of the hearing.

## III. Personal Jurisdiction

■■ Morequity argues on appeal that under Indiana Trial Rule 60(B)(6) the trial court lacked personal jurisdiction over it, and therefore, the trial court's Default Judgment and Decree of Foreclosure is void as against Morequity. When asked to review a trial court's decision to not set aside a judgment we give the trial court substantial deference on appeal. *In re Paternity of Baby Doe,* 734 N.E.2d 281, 284 (Ind.Ct.App.2000) (citation omitted). We are limited to determining whether the trial court abused its discretion, which occurs when the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* We may not reweigh the evidence or substitute our judgment for that of the trial court. *Id.* And upon a

motion for relief from judgment, the movant has the burden to show "sufficient grounds for relief under Ind[iana] Trial Rule 60(B)." *Id.* If basing its argument upon Trial Rule 60(B)(1), (2), (3), (4), or (8), the movant must also show a meritorious defense to the cause of action, which means that the movant must show that if the case was retried on the merits, there would be a different result. *Id.*

On January 19, 2001, approximately four months after the entry of the default judgment in foreclosure, to which Morequity consented, Morequity filed a Motion for Relief from Judgment and Stay of Sheriff's Sale. This motion failed to directly state the authority under which it was being filed; however, it stated that Morequity's consent to judgment "was wholly due to an administrative error." Appellant's App. p. A43. Then at the May 29, 2001 hearing, the parties argued under Indiana Trial Rule 60(B)(1) about whether there was a mistake and/or excusable neglect that would relieve Morequity from the judgment, and whether Morequity also had a meritorious defense, as required by Indiana Trial Rule 60(B). Again at the September 21, 2001 hearing the parties argued under Indiana Trial Rule 60(B)(1) about whether there was a mistake and/or excusable neglect that would relieve Morequity from the judgment. At neither hearing, nor in any pleading with the trial court, did Morequity argue that personal jurisdiction was lacking.

■ Nonetheless, Morequity now argues that personal jurisdiction was lacking, and that therefore, the judgment is void under Indiana Trial Rule 60(B)(6). It also argues that it did not waive this argument even though it was not raised to the trial court. Morequity correctly relies on *Stidham v. Whelchel*, 698 N.E.2d 1152 (Ind. 1998), for the proposition that "a judgment that is void for lack of personal jurisdiction may be collaterally attacked at any time and that the 'reasonable time' limitation under Rule 60(B)(6) means no time limit." *Id.* at 1156. Nevertheless, Morequity failed to include in its appellate brief that the *Stidham* court also concluded that "[a] claim of lack of personal jurisdiction may of course be waived or, ... is susceptible to 'cure' or 'waiver.'" *Id.* at 1155. The *Stidham* court concluded, "'waiver' must be by the person holding the rights." *Id.* at 1156.

The *Stidham* case involved a collateral attack on a judgment, not a direct appeal from a judgment. The defendant in *Stidham* was a Kentucky resident against whom an Indiana default judgment had been entered in a paternity case. The *Stidham* case raised a Fourteenth Amendment long arm due process issue where the challenged service of process was by certified mail to an out of state defendant. The defendant in *Stidham* argued that he could collaterally attack the default judgment in the trial court arguing lack of personal jurisdiction even though seventeen years had passed since entry of the judgment, and our supreme court agreed. *Id.*

Here, whether as a professional accommodation or otherwise, KeyBank served attorney Robertson rather than Morequity on February 24, 2000. On March 2, 2000, Robertson filed an appearance on behalf of Morequity, and an answer stating that Morequity did not dispute KeyBank's priority. Then on June 27, 2000, KeyBank filed a Motion for Entry of Default Judgment, and Robertson filed a consent to the foreclosure on Morequity's behalf.

In either August or September 2000, Morequity requested Robertson to foreclose the Morequity Mortgage, and name KeyBank as a defendant. At some point, Robertson came to realize that Morequity wanted to foreclose on the same mortgage

that was involved in KeyBank's foreclosure to which she had already consented to foreclosure by KeyBank. It was not until January 19, 2001, almost seven months after consenting to KeyBank's foreclosure, that Robertson, on Morequity's behalf, filed a motion for relief from the earlier foreclosure and to stay the Sheriff's sale, alleging that Morequity's previous consent to judgment in KeyBank's foreclosure was "due to an administrative error that led it to believe that the KeyBank Mortgage was indeed junior to the Morequity Mortgage." Appellant's App. p. A43.

The only motion filed by Morequity at the trial court level was a motion for relief from judgment under Indiana Trial Rule 60(B)(1), not under Trial Rule 60(B)(6) as a void judgment for lack of personal jurisdiction. Morequity argues that as soon as it hired new counsel to handle the motion, it attempted to file an affidavit that would have supported their argument that the trial court lacked personal jurisdiction over it. Filing an affidavit in support on one's argument in a pending proceeding is not the same as filing a Trial Rule 60(B)(6) motion based upon alleged lack of personal jurisdiction. Importantly, Morequity never argued to the trial court that the trial court lacked personal jurisdiction; it consistently and exclusively argued that the judgment should be set aside based upon mistake and/or excusable neglect.

The facts of *Siebert Oxidermo, Inc. v. Shields,* 446 N.E.2d 332 (Ind.1983), are far more analogous to our case. In *Siebert Oxidermo,* Shields brought suit against Siebert Oxidermo for injuries allegedly suffered from inhaling paint fumes during a test that was conducted at Shields' place of employment. Siebert Oxidermo's president received the summons and complaint at the end of April 1979, and promptly forwarded both items to its insurance agent, R.L. Jones & Associates ("R.L. Jones"), whom Siebert Oxidermo had hired just two months prior, in March of 1979. *Id.* at 339.

Nearly a month passed before R.L. Jones forwarded a copy of the summons and complaint to American States, Siebert Oxidermo's insurance carrier, on May 31, 1979. In the meantime, the trial court had entered a default judgment in the amount of $760,000.00 in favor of Shields just one week prior, on May 24, 1979, which was one day after the return date on the summons. *Id.* Siebert Oxidermo filed its first Rule 60(B)(1) motion in June of 1979, alleging that excusable neglect required the trial court to set aside the default judgment. *Id.* Based upon the broad discretion afforded trial courts when deciding whether excusable neglect exists and the specific facts of the case, a panel of this court affirmed the trial court, which portion of the unpublished opinion was adopted by our supreme court. *Id.* at 339–40.

In the *Siebert Oxidermo* opinion, the role of an insurance claims adjuster was analogized to the role of an attorney acting on a defendant's behalf when the court quoted *Henline, Inc. v. Martin,* 169 Ind. App. 260, 269, 348 N.E.2d 416, 420–21 (1976):

> "Considering the role of defendants' insurance company as the entity in charge of defendants' defense, it would not be unreasonable for the trial court to analogize an attorney acting on defendants' behalf so as to apply the 'general rule ... that the negligence of the attorney is the negligence of the client....' *Moe v. Koe,* [165 Ind.App. 98, 104–05, 330 N.E.2d 761, 765 (1975) ]."

*Id.* Refusal to relieve a party from a judgment based upon the action of the party's attorney has a long history in Indiana common law. Even in 1884, our supreme court held:

> It is said that the attorney has no authority to agree that judgment should

be rendered. Concede it, and yet this fact does not entitle him to relief from the judgment. The attorney's act was appellant's act, and if as between them the attorney had no such authority, and appellant was injured, his remedy is against the attorney, and not to be relieved from the judgment.

*Kreite v. Kreite,* 93 Ind. 583, 585 (1884).

■ We conclude that under these facts and circumstances, and in view of the well-established common law that vests counsel with binding representational authority for her/his clients,[4] Morequity waived its right to argue on appeal that the trial court lacked personal jurisdiction over it.

## IV. Conclusion

We conclude that the trial court did not abuse its discretion when it refused to admit Morequity's affidavit in support of its Motion for Relief from Judgment and Stay of Sheriff's Sale filed on the day of hearing, after the deadlines for filing such items had long before passed. Additionally, we conclude that Morequity waived its right to argue that the trial court lacked personal jurisdiction over it such that the judgment against it was void. Therefore, we conclude that Morequity failed to prove prima facie error, and we affirm the trial court's order denying Morequity relief from its judgment.

Affirmed.

BARNES, J., and KIRSCH, J., concur.

---

4. An attorney may without express authority, bind his client by agreement that judgment may be taken against him, and that, too, though the attorney know that his client has a good defense to said action. If [the attorney] acts contrary to the express directions of his client, or to his injury, the client must look to the attorney for redress. *Koval v. Simon Telelect, Inc.,* 693 N.E.2d 1299, 1305 (Ind.1998) (quoting *Thompson v. Pershing,* 86 Ind. 303, 310 (1882)).